Case 1:19-cr-20615-UU   Document 3   Entered on FLSD Docket 09/23/2019   Page 1 of 14

FILED BY _____ D.C.
SEP 20 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **19-20615CR-UNGARO**

18 U.S.C. § 371
18 U.S.C. § 1349
18 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 2
18 U.S.C. § 982

MAGISTRATE JUDGE
O'SULLIVAN

UNITED STATES OF AMERICA

vs.

REBECCA CAIRO,

              Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.    The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4. CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto"). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. On December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

5. Physicians, clinics and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the

services that were performed for the beneficiary, the date that the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered the services.

6. Providers submit claims to Medicare electronically. To receive Medicare funds, providers submit to Medicare an electronic funds transfer ("EFT") authorization. Medicare makes payments to providers through EFT via interstate wire communications.

## Part A Coverage and Regulations

### Reimbursements

7. The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if the patient:

(a) was confined to the home, also referred to as homebound;

(b) was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

(c) the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

### Record Keeping Requirements

8. Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of the patients, as well as records documenting the actual treatment of patients to whom services

3

were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

9. Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were a (i) POC that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

10. Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any instruction provided to the patient and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health nurse, therapist and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

**The Defendant, Related Companies, and Other Individuals**

11. One Plus One Florida, Inc., d/b/a Cairo Home Care – Dade ("Cairo") was a Florida corporation purportedly doing business as an HHA in Miami Lakes, Florida, in Miami-Dade County.

12. Defendant **REBECCA CAIRO** was the owner and operator of Cairo.

13. Office Manager 1 was the office manager of Cairo.

14. Individual 1 was a resident of Miami-Dade County.

15. Individual 2 was a resident of Miami-Dade County.

**COUNT 1**
**Conspiracy to Defraud the United States and Pay Health Care Kickbacks**
**(18 U.S.C. § 371)**

1. Paragraphs 1 through 15 of the General Allegations in this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2016, and continuing through in or around September 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**REBECCA CAIRO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with Office Manager 1, Individual 1, Individual 2, and others known and unknown to the Grand Jury:

    a. to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the

5

Medicare program in violation of Title 18, United States Code, Section 371; and to commit an offense against the United States, that is,

    b.  to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3.  It was a purpose of the conspiracy for the defendant and her co-conspirators to unjustly enrich themselves by, among other things: (a) offering and paying kickbacks and bribes in return for referring Medicare beneficiaries to Cairo to serve as patients without regard to whether the beneficiaries needed home health services; (b) submitting and causing the submission of false and fraudulent claims to Medicare for home health services; (c) concealing and causing the concealment of kickbacks and bribes and false and fraudulent claims; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.  **REBECCA CAIRO** signed a Medicare Enrollment form on behalf of Cairo in which she certified that she would abide by all Medicare laws and regulations, including the Federal anti-kickback statute.

6

5. **REBECCA CAIRO** and Office Manager 1 offered and paid kickbacks and bribes to patient recruiters, including Individual 1 and Individual 2, by cash and by check, in exchange for recruiting Medicare beneficiaries to serve as patients of Cairo.

6. **REBECCA CAIRO** and her co-conspirators submitted and caused Cairo to submit claims to Medicare for home health services purportedly provided to Medicare beneficiaries who were obtained by Cairo through kickbacks and bribes and not eligible for Medicare reimbursement.

7. **REBECCA CAIRO** caused Medicare to pay Cairo based on claims for home health services purportedly provided to Medicare beneficiaries who were referred to Cairo through kickbacks and bribes, and **CAIRO** diverted these payments for her own personal use and benefit and the benefit of others.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. On or about November 30, 2016, **REBECCA CAIRO** signed check number 6764 in the amount of $3,290 to a company owned by Individual 2 as a kickback for referring Medicare beneficiaries to Cairo.

2. On or about December 20, 2016, **REBECCA CAIRO** signed check number 6882 in the amount of $3,250 made payable to Individual 1 as a kickback for referring Medicare beneficiaries to Cairo.

3. On or about approximately February 7, 2017, **REBECCA CAIRO** signed check number 7075 in the amount of $4,680 made payable to Individual 1 as a kickback for referring Medicare beneficiaries to Cairo.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-3
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

1. Paragraphs 1 through 14 of the General Allegations section in this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### REBECCA CAIRO,

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item or service, for which payment may be made in whole or in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Date | Check Number | Amount | Description |
|---|---|---|---|---|
| 2 | 12/20/2016 | 6882 | $3,250 | One Plus One check made payable to Individual 1 |
| 3 | 2/7/2017 | 7075 | $4,680 | One Plus One check made payable to Individual 1 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNT 4
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

3. Paragraphs 1 through 15 of the General Allegations in this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

4. From in or around January 2016, and continuing through at least in or around August 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**REBECCA CAIRO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Office Manager 1, Individual 1, Individual 2, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

    a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

    b. to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in

interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

5. It was a purpose of the conspiracy for the defendant and her co-conspirators to unjustly enrich themselves by, among other things: (a) offering and paying kickbacks and bribes in return for referring Medicare beneficiaries to Cairo to serve as patients, without regard to whether the beneficiaries needed home health services; (b) submitting and causing the submission of false and fraudulent claims, via interstate wire communication, to Medicare for home health services; (c) concealing and causing the concealment of kickbacks and bribes and false and fraudulent claims; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

6. **REBECCA CAIRO** and her co-conspirators submitted and caused Cairo to submit false and fraudulent claims to Medicare, via interstate wire communication, seeking payment for home health services that were not medically necessary and not provided to Medicare beneficiaries.

7. As a result of these false and fraudulent claims, **REBECCA CAIRO** caused Medicare to make payments to Cairo in the approximate sum of $5,994,073.

8. **REBECCA CAIRO** and her co-conspirators, including Office Manager 1, diverted the fraud proceeds for the personal use and benefit of themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
## (18 U.S.C. § 982)

1. The allegations in this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which defendant **REBECCA CAIRO** has an interest.

2. Upon conviction of any violation alleged in this Indictment, the defendant **REBECCA CAIRO** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property subject to forfeiture includes, but is not limited to, approximately $5,994,073.48 in U.S. currency, which the United States may seek as a forfeiture money judgment.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(1) and 982(a)(7), Title 31, United States Code, Section 5317(c), and the procedures set forth in Title 21, United States Code, Section 853.

A TRUE BILL, \_\_\_\_

FOREPERSON

_(signed)_
ARIANA FAJARDO ORSHAN
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

ALLAN MEDINA
ACTING DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_(signed)_
SARA M. CLINGAN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

REBECCA CAIRO,
_____ Defendant. _____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)
- ✓ Miami
- ___ Key West
- ___ FTL
- ___ WPB
- ___ FTP

New defendant(s)         Yes ___   No ___
Number of new defendants ___
Total number of counts   ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)   No
   List language and/or dialect   _____

4. This case will take __4__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | | | |
   |---|---|---|
   | I | 0 to 5 days | ✓ |
   | II | 6 to 10 days | |
   | III | 11 to 20 days | |
   | IV | 21 to 60 days | |
   | V | 61 days and over | |

   (Check only one)

   | | |
   |---|---|
   | Petty | |
   | Minor | |
   | Misdem. | |
   | Felony | ✓ |

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ___   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ___   No ✓

_____
SARA M. CLINGAN
DOJ TRIAL ATTORNEY
COURT ID NO. A5502508

*Penalty Sheet(s) attached

REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**   REBECCA CAIRO

**Case No:** _____

Count #:   1

  Conspiracy to Defraud the United States and Pay Health Care Kickbacks

  Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Counts #:   2 – 3

  Payment of Kickbacks in Connection with a Federal Health Care Program

  Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max Penalty**:   Ten (10) years' imprisonment as to each count

Count #:   4

  Conspiracy to Commit Health Care Fraud and Wire Fraud

  Title 18, United States Code, Section 1349

\*Max Penalty:   Twenty (20) years' imprisonment

Count #:

_____

_____

\*Max Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**